**William T. WOHLFORD, and Mary Clare D. Wohlford, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–177–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

March 31, 1992.

William T. and Mary Clare D. Wohlford, pro se.

Stephen U. Baer, Asst. U.S. Atty., Roanoke, VA, for U.S.

## MEMORANDUM OPINION

WILSON, District Judge.

This case is before the court on the motion of the defendant, United States of America, to dismiss and on the motion of the plaintiffs, William T. Wohlford and Mary Clare D. Wohlford ("Wohlfords"), for summary judgment. These motions concern nine claims brought by the Wohlfords against the United States in an amended complaint dated January 31, 1991, and a supplemental complaint dated April 1, 1991. The Wohlfords seek damages and injunctive relief based on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), and 2671—2680, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551—706. The court finds that all of the Wohlfords' claims are either barred by res judicata, subject to the discretionary function exception to the FTCA, or moot.

I

This case is the Wohlford's latest attempt to salvage their dairy goat farm operation in Wythe County, Virginia. The Wohlfords began their goat farm operation in the late 1970s with no previous experience. In 1978, 1979, and 1980, the Wohlfords applied for and obtained farm operating loans ("FOL")

388

from the Farmers Home Administration ("FmHA"). To obtain the loans, the Wohlfords gave the FmHA deeds of trust on their real property. The Wohlfords contend they relied on their local FmHA official, who informed them that the loans conformed with all applicable statutes and regulations, including 7 C.F.R. § 1943.24(b)(1)(i) which requires the loan applicants to have "an adequate, decent, safe and sanitary dwelling." However, according to the Wohlfords the FmHA made the loans with knowledge that the Wohlfords were living in substandard housing that lacked a septic system. The Wohlfords stopped making payments on their loans and real property taxes in January 1980 and have not made any since then. During each of the following three years, the Wohlfords applied for additional FOLs. Each application was denied initially and on appeal.

On August 20, 1984, the Wohlfords filed an administrative claim with the United States Department of Agriculture based on the FTCA, but were denied relief. The Wohlfords then initiated their first *pro se* lawsuit on February 8, 1985, when they filed an action against the Department of Agriculture and twenty current or former FmHA officials. That lawsuit alleged forty-five "causes of action" arising out of their farm loan appeals. The Wohlfords' claims were based on a variety of legal premises, including alleged violations of their constitutional rights, the Privacy Act, the Freedom of Information Act, and the FTCA. The FTCA claim alleged that from early 1978 continuing through the present, the FmHA caused them injury by its continuing negligent administration and supervision of its own mandatory operational procedures, which prescribe the minimal duties owed by the FmHA to recipients of agricultural loans.

At the time the FmHA processed their loans, the Wohlfords allegedly informed the local FmHA official that the United States Forest Service had a claim on approximately fifty acres of their land. Nonetheless, the FmHA accepted deeds of trust on all of the land after receiving title opinions on the property. On November 25, 1985, the Wohlfords obtained a quitclaim deed to the fifty

acres from the Forest Service. In 1986, the Wohlfords concluded that they lacked valid title to another 56 acres of the land covered by the deeds of trust because their predecessor in title allegedly never owned the property. Consequently, the Wohlfords informed the FmHA of that cloud on the title.

After dismissing several of the individual defendants, the court conducted a bench trial on January 5 and 6, 1987, and granted judgment to the remaining defendants on all claims, including the FTCA claim. The Court of Appeals affirmed the district court's judgment in an unpublished opinion dated March 17, 1988. The Court of Appeals specifically held that the district court properly dismissed the Wohlfords' FTCA claim because the defendants' administration of the Wohlfords' farm loans fell under the FTCA's exception for discretionary actions and cited as support *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 375 (5th Cir. 1987), and *Tuepker v. Farmers Home Admin.*, 708 F.2d 1329, 1333 (8th Cir.1983).

According to the Wohlfords, their home and all its contents were totally destroyed by fire on December 16, 1987, forcing them to reside on the property in a trailer. On August 11, 1989, the Wohlfords filed a second administrative claim with the FmHA. The Wohlfords again alleged the FmHA improperly administered their loans, failed to provide farm management supervision, and denied them proper appeals of adverse FmHA decisions. The FmHA denied the Wohlfords' second claim on July 12, 1990. The denial of that claim has led to this case.

Prior to the FmHA's denial of the Wohlfords' second claim, the Wohlfords applied, pursuant to 7 U.S.C. § 2001, for "primary loan servicing," which requires the FmHA to modify delinquent FOLs to the maximum extent possible to avoid losses on the loans. On June 6, 1989, the FmHA initially determined that the Wohlfords did not qualify for loan servicing. The Wohlfords appealed that determination on August 4, 1989. In December 1989, they informed the FmHA that they believed portions of their property were unencumbered by the deeds of trust and, therefore, should not be considered in the loan servicing decision. They also requested a

review of the validity of the liens and loans before proceeding with the appeal. Nonetheless, the FmHA conducted an appeal hearing on February 12, 1990, and on March 2, 1990, affirmed its initial determination. The FmHA also had the attorney who was responsible for the original title opinion prepare a new opinion, which was completed on May 17, 1990.

On June 6, 1990, the Wohlfords requested the National Appeals Staff of the FmHA to review the appeal decision. The Wohlfords requested a copy of the new title opinion, but the FmHA claimed that it was government work product prepared in anticipation of litigation and refused to provide it to the Wohlfords until the appeal review was completed. The FmHA issued its decision affirming the previous decisions on January 9, 1991. The Wohlfords filed this amended complaint in district court on January 31, 1991.

## II

Under Federal Rule of Civil Procedure 12(b)(6), if the court considers matters outside the pleadings such as affidavits, the court should treat a motion to dismiss as a motion for summary judgment and dispose of it in accordance with Federal Rule of Civil Procedure 56. *See Wilson–Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 251 (4th Cir. 1991). When the non-moving party would bear the ultimate burden of proof at trial on a dispositive issue, the party seeking summary judgment bears only "the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the motion is made and so supported, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue [of fact] for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

## III

### Count One

■ In their first claim, the Wohlfords argue that by granting them FOLs in 1978, 1979, and 1980, when the FmHA officers in fact knew or should have known that the Wohlfords' housing was substandard, the FmHA Wythe County Supervisor and other FmHA officials violated 7 C.F.R. § 1943.-24(b), which requires loan recipients to have adequate housing. According to the Wohlfords, the FmHA's failure to loan sufficient funds for satisfactory housing forced them to live in a substandard home and resulted in the loss of that home due to fire. The Wohlfords claim they are entitled to $2,063,000 in damages because the FmHA's violation of the regulations has caused them "serious inconvenience," "extreme physical discomfort," and "severe emotional distress."

■ This claim was available for determination in the Wohlfords' first lawsuit and, therefore, is barred by res judicata. Though the Wohlfords allege additional and continuing injuries as a result of the FmHA's decision to lend them money, the alleged cause of their injuries is the FmHA's initial decision to loan them money, which was addressed by the district court in their first suit and by the Court of Appeals on appeal. Both of the parties to this lawsuit were parties to the former lawsuit which resulted in a final judgment on the merits. Finally, the cause of action in this case is the same as in the former since it arises out of the same series of transactions that gave rise to the first suit. *See Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir.1990); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir.), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). The transactions giving rise to both actions concern the FmHA's loans to the Wohlfords despite the Wohlfords' housing conditions. Moreover, whether this specific claim was asserted in the first suit is not decisive since it was available for determination at that time. Res judicata applies to previously available claims regardless of whether they were raised in a former proceeding. *Aliff,*

914 F.2d at 43. Therefore, this claim is barred by res judicata.

■ Even if the Wohlfords' first claim were not barred by res judicata, the Wohlfords have failed to state a claim under the FTCA because the wrongful acts at issue fall within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Section 2680(a) excepts from the FTCA any claim based upon the exercise or the failure to exercise a discretionary function or duty on the part of a federal agency, "whether or not the discretion involved be abused." *See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). The exception covers acts that "involve an element of judgment or·choice." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958; *accord Gaubert,* 499 U.S. at ——, 111 S.Ct. at 1273. In addition, the exception protects actions involving "the permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959. Conversely, the exception does not apply when an employee fails to follow a course of action specifically prescribed by a statute or regulation that leaves the employee "no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958; *accord Gaubert,* 499 U.S. at ——, 111 S.Ct. at 1273. Here, the local FmHA official who processed the Wohlfords' FOLs was required to exercise his personal judgment to determine whether the Wohlfords qualified for the loans. Under 7 C.F.R. § 1943.24, the FmHA official was required to make a personal inspection and evaluation to determine whether the Wohlfords had adequate buildings, including an adequate house, for the farm operation. The regulations do not define what is adequate. Instead, the regulations require the FmHA officials to use their own judgment. Accordingly, those officials' actions are exempt under the FTCA.

## Count Two

In their second claim, the Wohlfords argue that the FmHA officials, including the county supervisor, committed "professional malpractice" by failing to ensure that the Wohlfords' FmHA loans were in compliance with the regulations requiring adequate facilities, such as satisfactory housing. For the reasons stated in count one, this claim also is barred by res judicata or in the alternative by the discretionary function exception to the FTCA.

## Count Three

In their third claim, the Wohlfords argue that the FmHA officials have continuously failed to afford them appeals that conform to the statutes and regulations and thereby denied them an opportunity to receive FmHA benefits and loan servicing options. The Wohlfords claim they have repeatedly suffered emotional distress because the FmHA officials have deliberately perverted the Wohlfords' appeals, including their latest appeal of the FmHA's denial of their application for loan servicing options. Arguing that Virginia recognizes the theories of negligence *per se* and intentional infliction of emotional distress, the Wohlfords seek $1,971,000 in damages resulting from the FmHA's alleged failure to provide them with proper appeals.

In their pleadings and other materials, the Wohlfords refer to several appeals involving their FmHA loans. However, they only appear to have made one appeal after their first trial in 1987. For the reasons previously stated, the Wohlfords' claim concerning the appeals that occurred prior to their trial are barred by res judicata. Moreover, even assuming res judicata does not bar this claim, the Wohlfords have failed to state a claim that is addressable under the FTCA. The Wohlfords have not and cannot establish that the alleged procedural errors are constitutionally significant. The FTCA was not intended to remedy procedural errors by an administrative agency that are redressable under the APA.

## Count Four

In their fourth claim, the Wohlfords argue that 7 C.F.R. §§ 1900.51 *et seq.,* specifically §§ 1900.55, 1900.57(d), and 1900.58, are inconsistent with 7 U.S.C. §§ 1983b and 2001. Further, the Wohlfords argue that the FmHA failed to follow the provisions of those statutes and regulations while conducting the Wohlfords' most recent appeal completed in

January, 1991. In particular, the Wohlfords claim that the FmHA failed to decide their latest appeal within 45 days as required by § 2001(h). The Wohlfords also argue that the FmHA acted arbitrarily and capriciously by conducting that appeal without first determining the validity of their FmHA loans and the liens.

Initially, the court finds no inconsistencies between 7 C.F.R. §§ 1900.51 *et seq.* and 7 U.S.C. §§ 1983b and 2001. Thus, the Wohlfords' recent appeal was proper to the extent that it was conducted in accordance with 7 C.F.R. §§ 1900.51 *et seq.* To the extent that the FmHA failed to decide the Wohlfords' appeal within the 45 day period provided in § 2001(h), the Wohlfords have not, nor could they, allege or demonstrate any injury resulting from that alleged failure and, therefore, have failed to state a claim upon which relief can be granted. Finally, the court finds inherently flawed the Wohlfords' claim that the FmHA conducted the appeal without first determining the validity of the loans. Though the Wohlfords were not expressly informed, the FmHA implicitly determined the validity of the loans because without valid loans, the FmHA would have lacked any reason to decide whether to provide loan servicing options to the Wohlfords.

### Counts Five & Six

In their fifth claim, the Wohlfords argue that the FmHA loaned them money in violation of the statutes and regulations, and therefore, their loans are illegal and unenforceable. In their sixth claim, the Wohlfords argue that the FmHA's liens on their property are invalid and unenforceable. These claims are barred by res judicata because they arise from the same transactions that gave rise to the first suit between the parties.

### Count Seven

In their seventh claim, the Wohlfords seek to compel the FmHA to pay their property taxes as required by 7 C.F.R. § 1863.4(a). Although that provision of the regulations was not intended to benefit borrowers, the claim is moot because the FmHA has paid those taxes since this claim was filed.

### Counts Eight and Nine

In their eighth claim, the Wohlfords argue that the FmHA's repeal of its own regulations, 7 C.F.R. §§ 1927.1 through 1927.7, was arbitrary and capricious because the FmHA did so "without supplying a reasoned analysis for [the] change," and therefore, this court should adjudge the FmHA's repeal of the regulations unlawful and void. In their ninth claim, the Wohlfords contend that the FmHA's repeal of the regulations was arbitrary and capricious because the FmHA repealed the regulations without affording a notice and comment period in contradiction of 5 U.S.C. §§ 553(b) and (c).

On January 10, 1991, the FmHA published a rule removing the regulations because the FmHA found the regulations were contrary to current federal and state court decisions and were outdated. Federal Statute of Limitations, 56 Fed.Reg. 943 (1991). The FmHA further explained that the regulations were never intended to impose additional time restrictions on the exercise of its rights to foreclose its security instruments and were only intended to provide internal agency management. *Id.* Thus, the Wohlfords' argument that the FmHA repealed its regulation without supplying a reasoned analysis for the change is unfounded.

Administrative agencies are exempt from the rule making requirements in the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, when the rule involves "a matter of agency management." 5 U.S.C. § 553(a)(2). In addition, "except when notice or hearing is required by statute," an agency is not required to give notice for comment in rule making when the rule is an interpretive rule or a rule of agency procedure or practice. 5 U.S.C. § 553(b)(A). A rule is interpretive, rather than substantive or legislative, if it simply states "what the administrative agency thinks the statute means, and only 'remind[s]' the affected parties of existing duties." *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n,* 874 F.2d 205, 207 (4th Cir.1989) (citations omitted). "In contrast, a substantive or legislative rule ... has the force of law, and creates new law or imposes new rights or duties." *Id.* (citations omitted). "[T]he proper focus in determin-

ing whether an agency's act is legislative is the source of the agency's action, not the implications of that act:

> If the rule is based on specific statutory provisions, ... it is an interpretative rule. If, however, the rule is based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate, the rule is likely a legislative one."

*Fertilizer Inst. v. United States EPA,* 935 F.2d 1303, 1308 (D.C.Cir.1991) (quoting *United Technologies Corp. v. United States EPA,* 821 F.2d 714, 719–20 (D.C.Cir.1987)).

The regulations at issue here, 7 C.F.R. §§ 1927.1. through 1927.7, simply interpreted the Federal Statute of Limitations Act ("Act"), 28 U.S.C. § 2415, in relation to the FmHA and outlined the procedures to be followed by FmHA personnel to prevent the Federal Statute of Limitations Act from being asserted as a defense in FmHA actions. *See* 7 C.F.R. § 1927.1. The Act is explicit and does not grant agencies authority to expand or alter the time limitations. *See* 28 U.S.C. § 2415. The regulations do not create any additional time limitations for the FmHA to bring suit. Instead, the regulations expressly address the Act and explain its application to FmHA actions. Accordingly, this court finds that the repealed regulations were interpretative and not subject to the rule making procedures required by the Administrative Procedure Act. Therefore, the Wohlfords' eighth and ninth claims are dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon relief can be granted.

### IV

For the foregoing reasons, the court will enter summary judgment in favor of the United States as to counts one, two, five, six, and part of three and will dismiss counts one, two, four, seven, eight, nine, and the remain-

ing part of count three for the reasons stated above.[1]

An appropriate Order will issue.

1. The court has set forth some, but not all, of the infirmities of the Wohlfords' claims. Clearly the gravamen of the Wohlfords' numerous, and frequently ill-defined, claims is that the FmHA loaned them money, just not enough, and that the FmHA will not loan them any more money. That premise suggests other infirmities, as well.